THE HONORABLE BARBARA J. ROTHSTEIN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

DERRICK BRANCH,

               Petitioner,

        v.

RONALD HAYNES,

               Respondent.

No. 2:24-cv-00517-BJR-TLF

ORDER ADOPTING REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner Derrick Branch is a state prisoner who currently resides at the Airway Heights Corrections Center in Washington State. He seeks relief under 28 U.S.C. § 2254 from a 2021 King County Superior Court judgment and sentence. Currently before the Court is the Report and Recommendation of the Honorable Theresa L. Fricke in which she recommends that this Court deny the federal habeas petition without an evidentiary hearing and dismiss the case with prejudice ("the R&R"). Dkt. No. 33. Petitioner filed objections and amended objections to the R&R. Dkt. Nos. 34, 36. Having reviewed the R&R, Petitioner's

amended objections thereto, the record of the case, and the relevant legal authority, this Court will adopt the R&R. The reasoning for the Court's decision follows.[1]

## II.    BACKGROUND

Petitioner and S.M. met in 2015 and began a romantic relationship. On July 1, 2015, Valley Medical Center Emergency Department treated S.M., where she reported that her boyfriend had attacked and raped her. On June 1, 2016, S.M. reported domestic violence to the Des Moines Police Department. The next day, the Des Moines Police Department responded to a 911 call in which S.M. claimed that her boyfriend had choked her. She was transported to the emergency room at Highline Medical Center where she alleged that her boyfriend physically and sexually abused her during their relationship. S.M. went to Des Moines Police Department again on June 3, 2016 and reported more details about the prior rape and abuse by Petitioner. S.M. then obtained a protection order against Petitioner but she was seen with him on a number of occasions after the court entered the no-contact order.[2]

The State charged Petitioner with four counts of assault, three counts of violation of a no-contact order, and one count rape. Before and during trial, S.M. recanted on her prior statements and testified that Petitioner never assaulted or raped her. She testified that her

---

[1] Petitioner filed a notice of appeal of the R&R with the Ninth Circuit on April 9, 2025. Dkt. No. 37. Nevertheless, this Court retains jurisdiction over this matter. "A report and recommendation is not an appealable order, and thus [Petitioner's] notice of appeal is premature and does not divest this court of jurisdiction over this matter." *Colbert v. Speer*, 2025 WL 437725, **1 (W.D. Wash. Feb. 7, 2025) *citing Burnside v. Jacquez*, 731 F.3d 874, 875 (9th Cir. 2013) ("A notice of appeal from a magistrate judge's report and recommendation is ineffective.").

[2] The following was taken the Washington Court of Appeals opinion in *Washington v. Branch*, No. 78379-3-1 at 2-3, Dkt. No. 11-1, Ex. 3.

injuries were either caused by someone other than Petitioner or by herself when she would attack Petitioner and he would defend himself.

Petitioner was convicted of rape in the second degree, assault in the fourth degree, and multiple violations of a court order. The trial court sentenced Petitioner in May 2018 and Petitioner appealed the conviction to the Washington Court of Appeals. The Appellate Court affirmed the conviction but remanded for resentencing. Petitioner filed a motion for reconsideration, which the Appellate Court denied, and the Washington Supreme Court denied review without comment in September 2020. The Court of Appeals issued the mandate in October 2020 and the trial court imposed an indeterminate sentence of 90 months to life on the rape conviction.

In April 2021, Petitioner filed a post-conviction motion in the trial court, which the trial court transferred to the Court of Appeals for consideration as a personal restraint petition ("PRP"). The Appellate Court affirmed the new sentence and denied the PRP. Petitioner sought review in the Washington Supreme Court, which denied review without comment in January 2024. The mandate was issued on January 29, 2024.

Petitioner filed the instant federal habeas petition on April 15, 2024, and an amended petition on July 12, 2024.[3] Dkt. Nos. 4, 25. The amended petition presents the following grounds for relief:

1.    The prosecution committed incurable misconduct that prejudiced Petitioner and denied his right to a fair trial;

2.    Petitioner was denied effective assistance of appellate counsel because his attorney did not raise the prosecutorial misconduct issue on direct appeal;

---

[3] Respondent concedes that the habeas petition is timely and that the claims for relief are properly exhausted.

3.    The trial court violated the Due Process Clause of the Fourteenth Amendment by disregarding state evidentiary rules;

4.    The state appellate court did not consider highly probative evidence, in regard to the prosecutor's misconduct, of the State's theory of the case, when it denied Petitioner's PRP;

5.    The state appellate court did not adjudicate on the merits Petitioner's claim of prosecutorial misconduct in his direct appeal or PRP, and did not adjudicate on the merits his ineffective assistance of appellate counsel in its denial of his PRP; and

6.    The state appellate court overlooked highly probative evidence that was properly presented in regard to Prosecution Trial Exhibit 117 (Bates 3357-58) and Defense Trial Exhibit 21 when it denied Petitioner's PRP.

Dkt. 28 at 6-8, 17-22. The R&R recommends that this Court deny each of the foregoing claims with prejudice; Petitioner objects to each of the R&R's recommendations.

## III.    LEGAL STANDARDS

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Where, as here, the petitioner timely objects to a magistrate judge's report and recommendation, the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

A habeas corpus petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.* A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

A habeas corpus petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n. 8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court "may not simply

disagree with the state court's factual determinations," but it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

## IV.    DISCUSSION

### A.    Petitioner's Habeas Claims

#### 1.    Alleged Prosecutorial Misconduct (Counts I, IV, V, VI))

Petitioner alleges that the prosecutor in his criminal trial committed incurable misconduct that so prejudiced Petitioner as to deny him his right to a fair trial. This allegation forms the basis of Petitioner's habeas claims in Counts I, IV, V, and VI. Specifically, in Count I, Petitioner alleges prosecutorial misconduct denied him his right to a fair trial. In Count IV, he alleges that the Washington State Court of Appeals failed to consider the alleged prosecutorial misconduct in light of the "State's theory of the case" when it denied his PRP. In Count V, Petitioner alleges that the Appellate Court failed to adjudicate his prosecutorial misconduct claim on the merits when it adjudicated his direct appeal and his PRP. Lastly, in Count VI, Petitioner alleges that the Appellate Court "overlooked" highly probative evidence when it determined that the prosecutor did not commit misconduct in his criminal trial. Because each of the foregoing claims rests on the same set of facts, the Court addresses them together.

##### a.    Factual Allegations Related to the Prosecutorial Misconduct Claims

Before trial, the State sought to admit ER 404(b) evidence of prior acts of violence by Petitioner, including statements S.M. made to a sexual assault nurse examiner, to the police, and in support of a petition for a domestic violence protection order regarding an alleged

sexual assault in February 2015. Because S.M. was a recanting victim, the State sought to offer this evidence to bolster S.M.'s credibility and to prove that the charged acts occurred. Conversely, Petitioner moved to exclude the uncharged prior act evidence, including evidence about the February 2015 assault. The trial court denied the State's motion and granted Petitioner's motion. It excluded evidence of the uncharged prior acts, including the February 2015 assault allegation, pursuant to ER 404(b) because it determined that it could not find by a preponderance of evidence that the uncharged acts occurred. The trial court reserved whether the same evidence could be used later to impeach S.M.

On direct examination of S.M., the State laid a foundation that S.M was attending Green River Community College in 2015 and had moved in with Petitioner. The following exchange then occurred:

> [State] Okay. And were you still going to college at this time?
>
> [S.M.] I think no.
>
> [State] Why?
>
> [S.M.] Uhm, because some things had happened prior, uhm, that had stopped me from going to college.
>
> [State] What was that?
>
> [S.M.] Uhm, I was attacked and sexually assaulted, not by — not by [Petitioner], but by someone else, and so I stopped going to college.

Dkt. No. 11-3 at 151-155. Defense counsel objected to this testimony and out of the presence of the jury argued that S.M.'s testimony about the February 2015 assault was improper in light of the trial court's ER 404(b) ruling. When trial court asked defense counsel what he wanted the court to do, defense counsel responded, "I'm not asking the Court for a ruling,

I'm just making, I guess, an observation." Dkt. No. 11-3 at 907-909. However, the next day at trial, defense counsel requested that S.M.'s testimony about the February 2015 assault be stricken. The prosecutor countered that rather than striking the testimony, she should be allowed to ask follow-up questions to clearly distinguish the alleged February 2015 assault from the charged assault. The trial court noted that although S.M. mentioned the February 2015 sexual assault on direct, "it didn't sound like [the State] was specifically trying to elicit" prior act evidence and characterized S.M.'s testimony as "spontaneous." Dkt. No. 11-3 at 151-155. The trial court then declined to strike the testimony, stating that it was unlikely that the jurors would be able to obey the instruction and that it was not necessary to prevent unfair prejudice to Petitioner.

When S.M.'s testimony resumed, the prosecutor clarified that S.M. was dating Petitioner in February 2015, that he was her first boyfriend, and the first person she has sexual intercourse with. The prosecutor then asked:

> [State]: All right. I wanted to go back to something that you shared yesterday, that you had been attacked and sexually assaulted by someone else and that it happened near the college in Auburn.
>
> [DEFENSE COUNSEL]: Objection, relevance; prejudice.
>
> THE COURT: I'm going to allow it.
>
> [State]: Was that involving a stranger?
>
> [S.M.]: Uhm, pretty much, I had known him for like a few hours, yes.
>
> [S.M.]: A few hours, okay.
>
> [DEFENSE COUNSEL]: Again, objection, relevance.

THE COURT: Let's move on to something else until we have a chance to talk about this outside the presence of the jury, please.

[State]: Okay.

[State]: All right. … Did you tell [petitioner] about what had happened to you?

[S.M]: Uhm, I told him a little bit about what happened, yes.

[State]: Okay. So he knew that that had happened to you?

[DEFENSE COUNSEL]: Objection, relevance.

THE COURT: Overruled.

[S.M.]: Uhm, uhm, he told – I didn't – he knew some stuff.

Dkt. No. 11-3 at 955-956.

Later, out of the presence of the jury, the State asked the court to allow it to "ask clarifying questions to distinguish [S.M.'s testimony] as to the time period, where [the alleged February 2015 assault] occurred, whether she reported, and if she had injury." Petitioner objected, but the trial court allowed the State to ask these questions. The trial court reasoned that while it had excluded ER 404(b) evidence, at this point, S.M. had testified to a sexual assault by someone other than Petitioner, and the State was not asking the court to revisit the 404(b) analysis. When direct examination resumed, the State asked its questions. Dkt. No. 11-3 at 151-155.

### b.    Petitioner's Allegations Regarding the Prosecutor's Conduct

Petitioner claims that the prosecution committed "prejudicial misconduct by eliciting excluded, highly prejudicial prior act evidence in violation of the [trial] court's in limine ruling and the strictures of ER 404(b)." Dkt. No. 28 at 6. Citing to statements made by the

prosecutor in opening and closing statements, Petitioner argues that the State's "theory of the case" was to bolster its case by violating the trial court's ER 404(b) ruling and intentionally elicit S.M.'s testimony regarding the February 2015 assault to use as propensity evidence. Petitioner argues that the State needed S.M.'s testimony about the February 2015 assault to overcome the fact that S.M. was a recanting witness. According to Petitioner, S.M.'s testimony that she was raped by someone else in February 2015 bolstered the State's theory that S.M. would not blame Petitioner for the charged rape. He further argues that the prosecutor was well aware that the February 2015 rape occurred at the time that S.M. stopped attending college—citing to State's Trial Exhibit 117 and Defense Exhibit 21, which, respectively, are progress notes from S.M.'s therapy treatment after the February 2015 assault and notes from a King County public defender's interview with S.M.. Petitioner argues that these exhibits clearly demonstrate that the reason S.M. left college was because of the alleged February 2015 assault; as such, the prosecutor had to know that S.M. would bring up the assault in response to the prosecutor's inquiry as to why she left school. According to Petitioner, this alleged misconduct by the prosecutor so prejudiced him that he did not receive a fair trial.

**c.    Discussion of Prosecutorial Misconduct Claims**

Petitioner alleged prosecutorial misconduct in his direct appeal and in his PRP and both times the Appellate Court concluded that Petitioner had failed to demonstrate that the prosecutor committed prejudicial misconduct. For instance, in denying his PRP, the Appellate Court determined that:

> The prosecutor's questions to S.M. about the February 2015 incident were not improper. The State did not elicit S.M.'s testimony about it; rather, S.M. raised the incident herself in response to a question about why she left college. Further

questioning by the State about the incident did not elicit any of the previously excluded ER 404(b) evidence. ER 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." But S.M. did not testify that [Petitioner] attacked and sexually assaulted her. Rather, she testified that the perpetrator was someone else. Nor did the court permit the State to impeach S.M. with her prior statement in support of her petition for a DVPO that accused [Petitioner] of the February 2015 assault. Because the prosecutor's questions were not improper, [Petitioner] also cannot establish that they were prejudicial.

Dkt. No. 11-3 at 155.

After conducting a thorough analysis of the record and the Appellate Court's rulings on Petitioner's direct appeal and PRP, the Magistrate Judge determined that the Appellate Court "could reasonably conclude, as it did, that the prosecutor did not intentionally elicit S.M.'s testimony about the uncharged alleged sexual assault by a stranger in early 2015 but that S.M. raised the incident herself spontaneously." Dkt. No. 33 at 27. The Magistrate Judge also pointed out that the purpose of the trial court's ER 404(b) ruling was to exclude prior bad acts evidence and because the trial record is devoid of any evidence linking Petitioner in any way to the alleged February 2015 assault—indeed, S.M. specifically testified that it was not Petitioner who committed the assault—her testimony about the assault did not violate the trial court's ER 404(b) ruling. Lastly, the Magistrate Judge concluded that Petitioner did not identify any clearly established federal law that the Appellate Court allegedly violated in deciding his direct appeal and/or PRP that could support a habeas claim, noting that mere "disagreement with the [] appellate court's procedures and denial of his claims on post-conviction review does not establish a separate constitutional violation cognizable on habeas review." *Id.* at 30. Therefore, the Magistrate Judge recommends that this Court dismiss with prejudice Counts I, IV, V, and VI.

Rather than direct this Court to specific errors in the Magistrate Judge's application of the facts or law to Claims I, IV, V, and VI, Petitioner simply repeats the allegations he raised in the habeas petition; indeed, his objections to the Magistrate Judge's recommendations as to Counts I, IV, and V are verbatim recitations of his habeas claims. Dkt. No. 35-1 at 3. Such objections are not sufficient to warrant a *de novo* review of the Magistrate Judge's recommendations; rather, to merit a *de novo* review, Petitioner's objections must be "specific" and must identify "with particularity" the "basis for the objections." *Arido-Sorro v. Ryan*, 2020 WL 95478, *3 (D. Arizona Jan. 8, 2020) (quoting *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2nd Cir. 2002) (noting that frivolous, conclusive, or general objections need not be considered by the district court). The very purpose of "the magistrate judge system" is to "alleviate the workload of district courts." *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000); *see also*, *United States v. Reyna-Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003) ("[T]he underlying purpose of the Federal Magistrates Act is to improve the effective administration of justice."). Thus, allowing a petitioner to simply restate the same arguments already raised with and reviewed by a magistrate judge nullifies the purpose of the system and reduces the magistrate judge's role "to that of a mere dress rehearser." *Howell*, 231 F.3d at 622; *see also*, *Kenniston v. McDonald*, 2019 WL 2579965, *8 (S.D. Cal. June 24, 2019) ("This … is an improper attempt to rehash his entire argument and have this Court conduct a duplicative review where nearly every issue presented to the Magistrate Judge was raised for a second time on objection. '[P]arties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation, as the 'goal of the federal statute providing for the assignment of cases to magistrates is to 'increas[e] the overall efficiency of the federal judiciary.'") internal citations omitted; *Skinner v. Mosley*, 2019 WL

2394147, *3 (D. South Carolina June 6, 2019) (noting that petitioner's objections were not "specific because they are either a rehash of his initial Petition or do not direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations").

Nevertheless, this Court has conducted a thorough review of the record[4] and agrees with the Magistrate Judge that the Appellate Court reasonably rejected Petitioner's prosecutorial misconduct claim when it concluded that the prosecutor did not purposefully elicit, and the jury did not hear, inadmissible prior bad acts evidence in violation of the trial court's ER 404(b) ruling. Petitioner argues that in reaching its decision, the Appellate Court improperly ignored State's Trial Exhibit 117 (S.M.'s therapy treatment notes) and Defense Exhibit 21 (summary transcript of a public defender's interview of S.M.) that, according to Petitioner, put the prosecutor on notice that the reason S.M. left college was due to the February 2015 assault. This Court has reviewed both exhibits and finds that neither would have necessarily indicated to the prosecutor that the reason S.M. left school was due to the assault. Defense Exhibit 21 gives no indication whatsoever as to why S.M. left college. And while the therapy treatment notes in State's Trial Exhibit 117 indicate that S.M. was dealing with anxiety as a result of an attempted assault in February 2015, and that her schoolwork was suffering as a result, the notes do not state that the February 2015 assault was the reason she left college. Indeed, the therapy treatment notes also state that S.M. reported having "anxiety issues since the age of 5" and also claimed that "past domestic violence" had "affected her mental stability." Dkt. No. 11, Appendix B at 288, 312. In short, the records do

---

[4] This included reviewing the Supplemental Brief of Petitioner and Amended Statement of Claims submitted on Petitioner's behalf by the Washington Appellate Project in support of his PRP filed in the Appellate Court. *See* Dkt. No. 35-1 at 153-229.

not reflect that S.M. identified the February 2015 assault as the specific reason she stopped attending school and there is no reason to assume that the prosecutor would know that would be S.M.'s response to the prosecutor's questioning.[5]

Nor is this Court persuaded by Petitioner's "State's theory of the case" argument— *i.e.*, that the prosecutor intended to violate the trial court's ER 404(b) ruling because the State needed S.M.'s testimony about the February 2015 assault to bolster its case. Petitioner objects to statements the prosecutor made during opening and closing statements. This Court has reviewed those statements and finds that they are proper. "Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000); *see also United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) ("[P]rosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying."), *as amended on denial of reh'g* (Apr. 15, 1993). "The latitude afforded to prosecutors in arguing reasonable inferences from the evidence extends to attacks on a witness's credibility." *Spector v. Diaz*, 115 F. Supp. 3d 1121, 1149 (C.D. Cal. 2015).

Likewise, this Court also concludes that S.M.'s testimony regarding the February 2015 assault does not constitute improper prior bad acts evidence in violation of the trial court's ER 404(b) ruling. As stated earlier, the State had sought to introduce evidence of Petitioner's alleged prior bad acts relating to S.M.'s statements to healthcare providers and

---

[5] Thus, even if the Appellate Court failed to consider State's Trial Exhibit 117 and/or Defense Exhibit 21 in denying Petitioner's direct appeal and PRP, its failure to do so did not prejudice Petitioner.

police officers claiming that Petitioner had previously raped and assaulted her. The trial court

excluded that evidence, ruling that the State had failed to satisfy the requirements for

admission of such evidence under ER 404(b). S.M.'s testimony does not run afoul of this

ruling because it does not constitute prior bad acts evidence with respect to Petitioner. S.M.

did not state that Petitioner was involved in the February 2015 assault; to the contrary, S.M.

testified that Petitioner was *not* the perpetrator.[6]

      For the foregoing reasons, this Court concludes that Petitioner has failed to meet his

heavy burden of establishing that the Appellate Court's adjudication of his prosecutorial

misconduct claims on his direct appeal and in his PRP was so unreasonable that no

"fairminded jurist" could agree with the state court's resolution of his claims. *See Harrington*

v. *Richter*, 562 U.S. 86, 101 (2011). Thus, the Court adopts the Magistrate Judge's

recommendation that Counts I, IV, V, and VI must be dismissed with prejudice.

### 2.      Alleged Ineffective Assistance of Counsel (Count II)

      Petitioner alleges that his appellate counsel provided ineffective assistance by failing

to raise the prosecutorial misconduct claim on direct appeal. The Magistrate Judge

recommends dismissing this claim because Petitioner has failed to show either deficient

---

[6] Petitioner also alleges that the Appellate Court did not adjudicate the prosecutorial misconduct claim on the merits. The record refutes this allegation and instead demonstrates that the Court of Appeals in fact adjudicated the merits of the claim both on direct appeal and in the PRP proceedings. The Appellate Court initially rejected the prosecutorial misconduct claim on the merits in the direct appeal because Petitioner did "not identify any inadmissible evidence introduced by the State" nor did he "point to any motions in limine that the prosecutor violated." Dkt. No. 34 at 81. However, the Appellate Court revisited the issue when adjudicating Petitioner's PRP because "with the benefit of briefing in [the] PRP by appointed counsel, the basis for [Petitioner's prosecutorial misconduct] arguments is more apparent." *Id*. The Appellate Court then expanded on its reasoning for rejecting the prosecutorial misconduct claim.

performance by counsel or prejudice, both required elements for an ineffective assistance of counsel claim. Once again, Petitioner states a broad, non-specific objection to the Magistrate Judge's recommendation without directing this Court to a specific error in the proposed findings and recommendation, thus this Court reviews the recommendation for clear error. While Petitioner's counsel did not raise the issue of prosecutorial misconduct on direct appeal, the record demonstrates that Petitioner failed to establish that this failure was due to incompetence rather than simple professional judgment. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (noting that the process of winnowing out claims and focusing on the issues more likely to succeed on appeal is the hallmark of effective appellate advocacy). Nor can Petitioner establish prejudice because he cannot show a reasonable probability that the prosecutorial misconduct claim would have succeeded even if his counsel had raised it on appeal. Notably, Petitioner himself raised the claim on direct appeal in his *pro se* supplemental brief and the Appellate Court determined that Petitioner did not show misconduct warranting reversal. Petitioner then raises the issue again in his PRP with the assistance of appellate counsel and the Appellate Court again rejected the claim. Consequently, even if appellate counsel had provided deficient representation by not raising the prosecutorial misconduct claim on direct appeal—something this Court does not hold— Petitioner cannot show prejudice because the claim would not have succeeded. Thus, the Court adopts the Magistrate Judge's recommendation that the ineffective assistance of appellate counsel claim be dismissed. The Court will dismiss Count II with prejudice.

### 3.    Alleged Due Process Violation (Count III)

Petitioner alleges that the trial court violated his Fourteenth Amendment Due Process rights by refusing to strike S.M.'s testimony regarding the February 2015 sexual assault. He

argues that the "testimony about [the] irrelevant sexual assault during direct examination" constituted highly prejudicial bad acts propensity evidence that "allowed the jury to conclude that [Petitioner] committed both the charged [] rape and the uncharged [] rape, violating [Petitioner's] right to Due Process [.]" Dkt. No. 35-1 at 7. The Magistrate Judge recommends dismissing this claim because "[a]lleged errors in the admission of [] evidence are a matter of state law and generally not cognizable in a federal habeas corpus proceeding." Dkt. No. 33 at 34 citing *Estelle*, 502 U.S. at 68. Petitioner fails to point to any error in the Magistrate Judge's recitation of the factual allegations or application of the law to this claim. Instead, once again, he simply repeats the arguments he raised in his habeas petition.

This Court agrees with the Magistrate Judge that Petitioner is not entitled to habeas relief on this claim. "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983); *see also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (*quoting Patterson v. New York*, 432 U.S. 197, 201-202 (1977) (state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental"). Here, Petitioner argues that the trial court violated his due process rights by refusing to strike S.M.'s testimony about the February 2015 attack. However, even if this testimony did constitute propensity evidence—which the Appellate Court reasonably held it did not—Petitioner still would not be entitled to federal habeas relief because there "is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) citing *Estelle*, 502 U.S. at

75; *see also*, *Alberni v. McDaniel*, 458 F.3d 860, 863, 866 (9th Cir. 2006) (there is no clearly established Supreme Court precedent that the introduction of propensity evidence at trial, even when heavily relied on by the prosecutor in closing argument, violates due process rights under the Fourteenth Amendment). Therefore, this Court adopts the Magistrate Judge's recommendation to dismiss this claim. Count III will be dismissed with prejudice.

### B.    Evidentiary Hearing

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief," but it "is *not* required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in the original); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten*,137 F.3d at 1176. Because the grounds Petitioner raises can be resolved based solely on the state court record, and he has failed to prove his allegation of constitutional errors, this Court will not hold an evidentiary hearing on this petition.

### C.    Certificate of Appealability

This Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because no jurist of reason could disagree with the above evaluation of Petitioner's constitutional claims or conclude that the issues presented deserve encouragement to proceed further, this Court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the foregoing reasons, the Court HEREBY ADOPTS the Report and Recommendation, DENIES the federal habeas corpus petition without an evidentiary hearing, and DISMISSES the case with prejudice. Petitioner's request for a certificate of appealability is DENIED. The Clerk is directed to send copies of this order to Petitioner, Counsel for Respondent, and to the Hon. Theresa L. Fricke.

Dated this 3rd day of July, 2025.


Barbara Jacobs Rothstein
U.S. District Court Judge